# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NAQUEL HENDERSON,<br><br>*Petitioner*,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>*Respondent.* | No. 20-cv-2243 (DLF)<br>No. 19-cr-131 (DLF) |

## MEMORANDUM OPINION

On June 4, 2019, Henderson pleaded guilty to violating 18 U.S.C. § 922(g) and D.C. Code § 22-4503(a), which prohibit certain categories of persons, including convicted felons, from knowingly possessing firearms.  Dkt. 14.  Later, on June 21, 2019, the Supreme Court held that prosecutions under § 922(g) require proof that a defendant "knew he belonged to [a] category of persons barred from possessing a firearm." *Rehaif v. United States*, 139 S. Ct. 2191, 2200 (2019).  In this habeas action, Henderson argues that his § 922(g) conviction was constitutionally defective because neither his indictment nor his plea colloquy informed him of that requirement. *See* Mot. to Vacate at 2–3, Dkt. 29; Pet'r's Reply and Suppl. Claims at 1–3, Dkt. 53.  He also argues that his counsel on direct review was constitutionally ineffective. *See* Mot. to Vacate at 4–9; Pet'r's Reply and Suppl. Claims at 22–30.  Before the Court is Henderson's motion, pursuant to 28 U.S.C. § 2255, to vacate his judgment of conviction.  Dkt. 29.  For the following reasons, the Court will deny that motion.

## I.    BACKGROUND

### A.    Attempted Robbery Prosecution

On December 14, 2015, petitioner Naquel Henderson pleaded guilty in D.C. Superior

Court to attempted robbery, an offense that is punishable by up to three years' imprisonment.

*See* Gov't's Mem. in Opp'n Ex. 1 (Docket in 2015 CF3 014588), Dkt. 43-1; *see also* D.C. Code

§ 22-2802.  Because the offense is "punishable by imprisonment for a term exceeding one year,"

convictions for attempted robbery are predicate offenses for both § 922(g) and D.C.'s felon-in-

possession statute.  18 U.S.C. § 922(g)(1); *accord* D.C. Code § 22-4503(a)(1).

During his attempted robbery prosecution, Henderson was repeatedly advised that his

offense was punishable by over one year's imprisonment—*i.e.*, that it was a felony.  At his plea

hearing, the presiding judge told him that "the maximum possible sentence for the crime of

attempted robbery is three years in prison . . . [and] three years of supervised release."  Gov't's

Mem. in Opp'n Ex. 4, at 5 (Previous Plea Hr'g Tr.), Dkt. 43-4.  To make sure that Henderson

understood this point, the judge asked, "Is there something about the maximum possible sentence

that you were not aware of?"  *Id.*  Henderson responded, "No."  *Id.*  Later, in his sentencing

hearing, the presiding judge explained that the D.C. Voluntary Sentencing Guidelines counseled

sentencing him to between "six to 24 months," Gov't's Mem. in Opp'n Ex. 5, at 3 (Previous

Sent'g Hr'g Tr.), Dkt. 43-5, which necessarily implied that his crime was punishable by over one

year's imprisonment.

Several documents from that prosecution made the same point.  First, Henderson's plea

agreement stated that "the maximum sentence for attempted robbery is 3 years in jail."  Gov't's

Mem. in Opp'n Ex. 2, at 21 (Plea Agreement), Dkt. 43-2.  It further states that Henderson "fully

under[stood]" the document, "discussed it with [his] attorney," and "agree[d] to it without

reservation." *Id.* at 3.  In addition, Henderson signed a waiver of indictment that described his

crime as a "felony offense."  Gov't Mem. in Opp'n Ex. 3, at 1 (Waiver of Indictment), Dkt. 43-

3.  The waiver likewise states that Henderson "consulted with [his] attorney."  *Id.*

For the crime of attempted robbery, Henderson ultimately received a sentence of six

months' incarceration, suspended in its entirety, with one year of supervised probation.  *See*

Previous Sent'g Hr'g Tr. at 10–11.  He did not appeal that decision.  *See* Gov't Mem. in Opp'n

at 4.  While on probation, and prior to the other events in this case, Henderson was charged with

one count of violating D.C.'s felon-in-possession statute.  *See* Gov't Mem. in Opp'n Ex. 6, at 1

(Pet'r's Mot. to Authorize Work Release), Dkt. 43-6; Gov't Mem. in Opp'n Ex. 7, at 1

(Complaint in 2016 CF2 7294), Dkt. 43-7.  That charge was later dismissed on a motion by the

government.  *See* Gov't Mem. in Opp'n Ex. 8, at 3 (Docket in 2016 CF2 7294), Dkt. 43-8.

### B.     Felon-in-Possession Prosecution

On October 12, 2016, officers of the Metropolitan Police Department arrested Mr.

Henderson while he was carrying a .45-caliber handgun.  *See* Statement of Offense at 4, Dkt. 15.

The handgun had "one round in the chamber."  *Id.*  Before the arrest, the officers saw Henderson

"throw a silver object in an upward motion."  *Id.* at 3.  They later found, in a nearby area, "a

silver magazine loaded with four rounds."  *Id.* at 4.  Following these events, Henderson was

indicted in D.C. Superior Court on several charges relating to these events.

On April 13, 2019, while those charges were still pending, Henderson was again arrested

in connection with a firearm.  *See id.* at 4–5.  Around 6:30 p.m. that evening, several

Metropolitan Police Department officers approached a group of individuals, including

Henderson.  *See id.* at 4.  Henderson initially walked away from the officers then broke into a

run, all the while keeping "his right arm pressed firmly against the right side of his body."  *Id.*

According to the proffer that supported the guilty plea in this case, one officer saw Henderson "toss a black firearm through the open front passenger window of a passing vehicle onto the front passenger seat." *Id.* The officer ran up to the vehicle and recovered, from the front passenger seat, a .40-caliber semi-automatic, which was loaded with 14 rounds of ammunition. *See id.* The vehicle's driver stated that he "had never seen the gun before." *Id.* at 5. Officers apprehended Henderson later that evening. *See id.* at 4–5. And in the proffer that supported his later guilty plea, Henderson acknowledged that he "unlawfully possessed" both the weapon and its ammunition. *Id.* at 5. Following these events, Henderson was indicted in this Court on one count of violating § 922(g). Dkt. 7.

On March 30, 2019, the government filed a superseding information that charged Henderson with one count of violating § 922(g) and one count of violating D.C.'s felon-in-possession statute. *See* Information at 1–2, Dkt. 13. The first count arose from the events on April 13, 2019, and the second arose from the events on October 12, 2016. *See id.* The predicate offense for both counts was Henderson's prior conviction for attempted robbery. *See id.* at 1. Henderson pleaded guilty to both counts on June 4, 2021. *See* Plea Agreement at 1, Dkt. 14. And in his plea agreement, he waived his rights to challenge the conviction both on direct review and on collateral attack, "except to the extent such a motion is based on newly discovered evidence or on a claim . . . [of] ineffective assistance of counsel." *Id.* at 7–8.

On August 15, 2019, this Court sentenced Henderson to 21 months' imprisonment for the first count and 36 months' imprisonment for the second count, to be served concurrently. *See*

Judgment at 3, Dkt. 26.  The Court also ordered 36 months of supervised release.  *See id.* at 4.

Henderson did not appeal that judgment.[1]

### C.      Collateral Attack

In between Henderson's guilty plea and sentencing, the Supreme Court decided *Rehaif v.*

*United States*, 139 S. Ct. 2191 (2019).  Before that decision, the federal courts of appeals had

unanimously held that § 922(g) does not require defendants to know their predicate status for

that offense.  *See id.* at 2195; *see also United States v. Rehaif*, 888 F.3d 1138, 1145 n.3 (11th Cir.

2018) (collecting cases).  For example, courts did not require defendants charged under

§ 922(g)(1) to know their status as felons.  *See, e.g.*, *United States v. Smith*, 940 F.2d 710, 713–

14 (1st Cir. 1991).  *Rehaif*, however, clarified that § 922(g) does require that knowledge: "[I]n a

prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), the Government must prove both that the

defendant knew he possessed a firearm and that he knew he belonged to the relevant category of

persons barred from possessing a firearm."  139 S. Ct. at 2200.  Henderson did not invoke *Rehaif*

at his sentencing or in any appeal of his conviction.

On August 14, 2020, Henderson filed the instant motion to vacate his conviction under 28

U.S.C. § 2255.  *See* Mot. to Vacate, Dkt. 29.  In that motion, he argued that his guilty plea was

involuntary, and so in violation of the Fifth Amendment, because neither his indictment nor his

plea colloquy informed him that § 922(g)(1) requires knowledge of felony status.  *See id.* at 2–3.

He further argued that this error in his proceeding was structural, *see id.* at 3, and that, in the

alternative, he "would not have pleaded guilty had he been [properly] notified," *id.* at 4.

---

[1] In its opposition to the instant motion, which it filed in February 2021, the government
represented that Henderson is "projected to complete his term of incarceration on March 30,
2021."  Gov't Mem. in Opp'n at 8.  Even if Henderson has been released, this Court retains
jurisdiction because a "habeas petitioner remains in the custody of the United States while on
supervised release."  *Mujahid v. Daniels*, 413 F.3d 991, 994 (9th Cir. 2005).

Henderson's motion also raised five ineffective assistance claims, two of which relate to *Rehaif* and three of which related to alleged oversights in his sentencing hearing.  *See id.* at 4–9.

On August 6, 2020, Henderson submitted two *pro se* letters to the Court.  *See* Letter to the Court (First), Dkt. 30; Letter to the Court (Second), Dkt. 31.  The letters raise additional ineffective assistance claims, all related to the discovery he received prior to his guilty plea.  *See* Second Letter at 1–2.  The second letter also asks the Court to disregard the first.  *See id.* at 1.

On April 23, 2021, Henderson raised several supplemental claims for relief.  First, he argued that his conviction violated the Sixth Amendment because his indictment did not "inform[ him] of the nature and cause of [his] accusation."  Pet'r's Reply and Suppl. Claims at 2 (quoting U.S. Const. amend. VI).  And second, he argued that this Court lacked jurisdiction to convict him because his indictment failed to charge an "offense[] against the laws of the United States."  *Id.* at 31 (quoting 18 U.S.C. § 3231).

The government has responded to both Henderson's initial claims, *see* Gov't's Mem. in Opp'n, Dkt. 43, and supplemental claims, *see* Gov't's Suppl. Mem. in Opp'n, Dkt. 55.  In those filings, it argues that Henderson has procedurally defaulted on all but his ineffective assistance claims; that his ineffective assistance claims fail to show both deficient performance and prejudice; and that his supplemental, jurisdictional claim is untimely.  *See* Gov't's Mem. in Opp'n at 13–48; Gov't's Suppl. Mem. in Opp'n at 3–13.  At the same time, the government concedes that Henderson's initial claims are timely, agrees that his claims are "theoretically cognizable" under § 2255, and declines to invoke the appeal waiver in his plea agreement.  Gov't's Mem. in Opp'n 13, at 13 n.5.  Henderson's motion to vacate is now ripe for review.

## II.    LEGAL STANDARD

A federal prisoner may move "to vacate, set aside, or correct" his sentence on the grounds that it "was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255.  But "[s]ection 2255 is not a substitute for a direct appeal."  *United States v. Pollard*, 959 F.2d 1011, 1020 (D.C. Cir. 1992).  "Once [a prisoner's] chance to appeal has been waived or exhausted . . . , we are entitled to presume he stands fairly and finally convicted."  *United States v. Frady*, 456 U.S. 152, 164 (1982).  Accordingly, "to obtain collateral relief[,] a prisoner must clear a significantly higher hurdle than would exist on direct appeal."  *Id.* at 166; *see also Pollard*, 959 F.2d at 1020.

When a prisoner seeks collateral relief "based on trial errors to which no contemporaneous objection was made," he must show both "'cause' excusing his double procedural default" and "'actual prejudice' resulting from the errors of which he complains."  *Frady*, 456 U.S. at 167–68 (citations omitted); *see also Massaro v. United States*, 538 U.S. 500, 504 (2003).  To show "cause," the prisoner must show "show that some objective factor external to the defense" prevented raising the defaulted claim on direct review.  *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  And to show "actual prejudice," he must show that the challenged error "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  *Frady*, 456 U.S. at 170 (emphasis omitted).

The Supreme Court has also recognized a "a narrow exception to the cause requirement where a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent' of the substantive offense."  *Dretke v. Haley*, 541 U.S. 386, 393 (2004) (quoting

7

*Murray*, 477 U.S. at 496).  For this purpose, "actual innocence means factual innocence, not mere legal insufficiency."  *Bousley v. United States*, 523 U.S. 614, 623 (1998) (internal quotation marks omitted).  In addition, "an ineffective assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal" and without any prior showing of cause and prejudice.  *Massaro*, 538 U.S. at 504.

Section 2255 does not require an evidentiary hearing when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b).  "Even if the files and records of the case do not clearly rebut the allegations of the prisoner, no hearing is required where his claims are 'vague, conclusory, or palpably incredible.'"  *Pollard*, 959 F.2d at 1031 (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)); *see also United States v. Toms*, 396 F.3d 427, 437 (D.C. Cir. 2005) (Roberts, J.) (holding that no hearing was required when the prisoner did not "point to any information outside the record that would have substantially assisted the district court in its disposition").  "Only where the § 2255 motion raises 'detailed and specific' factual allegations whose resolution requires information outside of the record or the judge's 'personal knowledge or recollection' must a hearing be held."  *Pollard*, 959 F.2d at 1031 (quoting *Machibroda*, 368 U.S. at 495).

## III.  ANALYSIS

### A.    The Petitioner's *Rehaif* Claim Fails

Because Henderson did not raise his *Rehaif* claim on direct review, he may prevail on it here only if he shows both "cause" and "actual prejudice."  *Frady*, 456 U.S. at 167–68.  The Supreme Court's decision in *Greer v. United States*, 141 S. Ct. 2090 (2021), controls on this point.  In that case, the Court squarely rejected the argument that *Rehaif* errors are structural.  *See id.* at 2100.  It also held that *Rehaif* claims that are raised for the first time on appeal will rarely

receive plain-error relief.  *See id.* at 2097.  Because "[f]elony status is simply not the kind of

thing one forgets," the Court reasoned, it will generally be difficult to show that, "but for [a]

*Rehaif* error, the outcome of [a] district court proceeding would have been different."  *Id.*

(citation omitted).  This holding has an obvious implication for *Rehaif* errors that are raised for

this first time on collateral attack.  By subjecting unpreserved *Rehaif* errors to a rigorous

application of the plain-error test on direct review, *Greer* requires that they also receive a

rigorous application of the cause-and-prejudice standard in habeas proceedings.  *See United*

*States v. Pollard*, 10 F.4th 948, 952–56 (9th Cir. 2021) (following that approach); *see also*

*Frady*, 456 U.S. at 166 (holding that, "to obtain collateral relief[,] a prisoner must clear a

significantly higher hurdle than would exist on direct appeal").

Henderson has failed to show cause for his procedural default.  When Henderson entered

his guilty plea, no obstacle prevented his defense counsel from raising a *Rehaif* challenge.  *See*

*Pollard*, 10 F.4th at 953–54.  It is no matter that the federal courts of appeals had previously

rejected similar readings of § 922(g).  *See Rehaif*, 888 F.3d at 1145 n.3 (collecting cases).

Although a prisoner may show cause when his claim is "is so novel that its legal basis is not

reasonably available to counsel," *Reed v. Ross*, 468 U.S. 1, 16 (1984), that exception does not

apply when, as here, "the Federal Reporters were replete with cases" raising the defaulted

argument, *Bousley v. United States*, 523 U.S. 614, 622 (1998).  Henderson separately argues that

his attorney's failure to file a notice of an appeal excuses his default.  *See* Pet'r's Reply and

Suppl. Claims at 4–5 (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 478–80 (2000)).  But an

attorney's performance does not constitute cause unless it is "constitutionally ineffective."

*Carrier*, 477 U.S. at 488.  And to the degree that Henderson argues that the failure to notice an

appeal was constitutionally ineffective, that claim is addressed in depth below.

In addition, Henderson has failed to show actual prejudice from his *Rehaif* error.  To meet that standard, he would need to show that, if this Court "had correctly advised him of the *mens rea* element of the offense, there is a reasonable probability that he would not have pled guilty."  *Greer*, 141 S. Ct. at 2097 (internal quotation marks omitted); *see Hill v. Lockhart*, 474 U.S. 52, 59 (1985).  In assessing that probability, the Court presumes both that Henderson knew his felony status at the time of his possession offenses, and also that the prosecution could prove his *mens rea* to a jury.  *See* 141 S. Ct. at 2097 (observing that, "[i]f a person is a felon, he ordinarily knows he is a felon," and that this "simple truth is not lost upon juries").  And here, both presumptions have substantial support on the record.  During his attempted-robbery prosecution, Henderson received notice of his felony status during his plea hearing, *see* Previous Plea Hr'g Tr. at 5; during his sentencing hearing, *see* Sent' Hr'g Tr. at 3; in his plea agreement, *see* Plea Agreement at 1, and in his waiver of indictment, *see* Waiver of Indictment at 1.  At his plea hearing, the sentencing judge even asked if Henderson was confused "about [his] maximum possible sentence," to which Henderson replied, "No."  Previous Plea Hr'g Tr. at 5.  From there, in between his attempted robbery prosecution and the charges in this case, Henderson was charged with a separate count of violating D.C.'s felon-in-possession statute.  *See* Pet'r's Mot. to Authorize Work Release at 1; Compl. in 2016 CF2 7294, at 1.  Although receiving a felon-in-possession charge is not evidence of guilt, *see* Pet'r's Reply and Suppl. Claims at 15, receiving one while on probation is surely a reminder of one's felony status.

Against that backdrop, Henderson's argument that he "had a viable *Rehaif* defense"[2] does

---

[2] Henderson argues that *Rehaif* requires proving, not only that he knew his felony status, but also that "he knew he was barred from possessing a firearm."  Pet'r's Reply and Suppl. Claims at 15 n.6.  The D.C. Circuit, however, squarely rejected that argument.  *See United States v. Brown*, 845 F. App'x 1, 3 (D.C. Cir. 2021); *see also Rehaif*, 139 S. Ct. at 2194 (requiring proof "that a

not persuade.  *Id.* at 11.  First, Henderson has not identified any evidence that he was unaware of his felony status at the relevant times.  *Greer* suggested that a defendant could show this unawareness through evidence of diminished "mental capacity" or by identifying "defects" in the trial documents from his predicate offense.  Tr. of Oral Argument at 62, *Greer*, 141 S. Ct. 2090 (2021) (No. 19-8709), *incorporated by reference*, 141 S. Ct. at 2097.  Here, however, those documents accurately described Henderson's maximum sentence.  *See supra*.  And although Henderson cites his pre-sentence report for the proposition that he has "diagnosed learning disabilities," Pet'r's Reply and Suppl. Claims at 11 (citing PSR ¶ 58a–b, Dkt. 20), he received his high school diploma, *see* PSR ¶ 57, and nothing in that report suggests that he is unable to understand either his 2015 offense or his present offenses, *see id.* ¶¶ 53–62.  Second, the fact that Henderson served no time in jail for his predicate conviction is irrelevant as to whether he knew his felony status.  *See* Pet'r's Reply and Suppl. Claims at 11.  On its face, § 922(g) requires knowledge that an individual was convicted of a crime "*punishable* by imprisonment for a term exceeding one year."  18 U.S.C. § 922(g)(1) (emphasis added).  And it is hard to see how Henderson's age—he was 18 at the time—or status as a first-time offender would have prevented him from understanding the unambiguous colloquies about his maximum sentence.[3]  Finally, Henderson has not provided any "contemporaneous evidence" that he was actually confused

defendant knew both that he engaged in the relevant conduct (that he possessed a firearm) and also that he fell within the relevant status (that he was a felon . . . )").

[3] In *United States v. Guzmán-Merced*, 984 F.3d 18 (1st Cir. 2020), the First Circuit found a *Rehaif* error in a felon-in-possession case to be prejudicial where, as here, a prisoner did not serve "even a day in prison for his prior offenses," "was only eighteen years old" when sentenced for that offense, and had a "a limited education and diagnosed learning disabilities." *Id.* at 20–21.  But that case was decided both without the benefit of *Greer* and without any evidence that the prisoner was actually apprised of his felony status during his predicate proceedings.

about his felony status at the time of his offenses.  *Lee v. United States*, 137 S. Ct. 1958, 1967

(2017).  Accordingly, for all the reasons above, the Court finds that Henderson lacked a viable

*Rehaif* defense at the time of his guilty plea, which strongly suggests that he would not have

foregone that plea to present that defense at trial.

Moreover, Henderson cannot establish actual prejudice based on *post hoc* assertions

about how he would have pleaded had "he been notified and properly advised."  Pet'r's Reply

and Suppl. Claims at 11.  In *Lee v. United States*, 137 S. Ct. 1958, the Supreme Court addressed

the standard for unwinding a guilty plea based on claims of ineffective assistance: "Courts

should not upset a plea solely because of *post hoc* assertions from a defendant about how he

would have pleaded but for his attorney's deficiencies.  Judges should instead look to

*contemporaneous evidence* to substantiate a defendant's expressed preferences."  *Id.* at 1967

(emphasis added).  Here, there is no contemporaneous evidence that Henderson wanted to go to

trial on any ground.  Substantial and uncontradicted evidence suggests that Henderson knew his

felony status.  *See supra.*  And the fact that "[c]onvicted felons typically know they're convicted

felons" is "not lost upon juries."  *Greer*, 141 S. Ct. at 2097–98 (citation omitted).  Henderson's

*post hoc* assertions accordingly carry little weight.

Finally, Henderson cannot establish actual innocence of his instant offenses.  *See* Pet'r's

Reply and Suppl. Claims at 13–19.  The bar for showing actual innocence is high.  To clear it, a

prisoner must show "that, in light of the new evidence, no juror, acting reasonably, would have

voted to find him guilty beyond a reasonable doubt."  *Schlup v. Delo*, 513 U.S. 298, 329 (1995);

*see also McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) (noting that the *Schlup* standard "is

demanding and seldom met" (citation omitted)).  Here, because Henderson failed to show that

his *Rehaif* error was prejudicial, it follows that his *Rehaif* claim does not establish actual

innocence.  As such, the actual-innocence exception from procedural default does not apply.

For the reasons above, this Court finds that Henderson has failed to show cause that would excuse the procedural default of his *Rehaif* claim, actual prejudice resulting from that default, or actual innocence of his charged offenses.  Thus, his *Rehaif* claim is an insufficient ground for vacating his conviction.  *See Frady*, 456 U.S. at 167–68 (citations omitted).[4]

### B.    The Petitioner Received Constitutionally Effective Assistance

The Sixth Amendment grants criminal defendants the right to the "effective assistance of counsel," *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970), both at trial and during the plea-bargaining process, *see Lafler v. Cooper*, 566 U.S. 156, 162 (2012).  To establish ineffective assistance, a defendant must show both that his attorney's "performance was deficient" and that "the deficient performance prejudiced" his defense.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Counsel's performance is deficient if it falls "below an objective standard of reasonableness."  *Id.* at 688.  And a performance is prejudicial if there is a "reasonable probability" that, but for the attorney's errors, "the result of the proceeding would have been different."  *Id.* at 694.

Recognizing that ineffective assistance claims "can function as a way to escape rules of waiver and forfeiture," the Supreme Court has instructed that "the *Strickland* standard must be applied with scrupulous care."  *Harrington v. Richter*, 562 U.S. 86, 105 (2011).  Thus, in assessing plea counsel's performance, the Court will make "every effort" to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Strickland*, 466 U.S. at 689.

---

[4] Given this disposition, the Court need not decide whether prosecution under D.C.'s felon-in-possession statute requires knowledge of felony status.  *See* Gov't's Mem. in Opp'n at 32–35.

Likewise, the Court will find prejudice only if "[t]he likelihood of a different result [is] substantial, not just conceivable." *Harrington*, 562 U.S. at 112 (citation omitted).

Henderson raises a variety of ineffective assistance claims. First, he argues that his counsel was ineffective for failing to advise him, at the time of his guilty plea, that the Supreme Court had granted certiorari in *Rehaif*. *See* Mot. to Vacate at 5–6. Second, he argues that his counsel was ineffective for failing to advise him, before his sentencing, about the Court's decision in *Rehaif*. *See id.* at 6–7. Third, he argues that his counsel was ineffective for failing to make three other arguments during his sentencing: one related to the application of the D.C. sentencing guidelines, one related to his criminal history score, and one related to the purported imposition of a mandatory minimum sentence for his D.C. offense. *See id.* at 7–9. Fourth, he argues that his counsel was ineffective for failing to request additional evidence before his guilty plea. *See* Second Letter to the Court at 1–2. And finally, he appears to argue that his counsel was ineffective for failing to consult him about filing a notice of appeal. *See* Pet'r's Reply and Suppl. Claims at 4–5. The Court will address these arguments in turn.

### 1. *Notice of Rehaif at the Plea Stage*

To begin, the Sixth Amendment did not require counsel to discuss *Rehaif* with Henderson before his guilty plea. As Henderson concedes, his plea counsel "was under no obligation to predict the outcome of the *Rehaif* case." Pet'r's Reply and Suppl. Claims at 27. And Henderson has not cited any authority in which a court found the failure to discuss a pending Supreme Court case to be constitutionally deficient. *Bridges v. United States*, 991 F.3d 793 (7th Cir. 2021), is inapposite. Although the case held that *Strickland* may require evaluating arguments that were "sufficiently foreshadowed in existing case law," it found deficient performance in part because "no binding in-circuit precedent" foreclosed the "exact issue" counsel overlooked. *Id.* at 804.

*But see United States v. Bryant*, 523 F.3d 349, 354 (D.C. Cir. 2008) (foreclosing any knowledge-of-status argument at the time of Henderson's guilty plea).  *United States v. Abney*, 812 F.3d 1079 (D.C. Cir. 2016), is also distinguishable.  In that case, the defendant was sentenced for a crack-tracking offense "five days after Congress passed the Fair Sentencing Act, when Presidential approval was imminent and virtually assured." *Id.* at 1082.  The D.C. Circuit held that counsel's failure to request a continuance of the defendant's sentencing was "objectively unreasonable," as the Act's terms, which were retroactive, *see Dorsey v. United States*, 132 S. Ct. 2321 (2012), would have cut his mandatory minimum sentence in half.  *Abney*, 812 F.3d at 1082.  That same reasoning does not apply here, where the outcome in *Rehaif* was far from "imminent," and where it is unclear how even a defendant-friendly outcome could have benefited Henderson.[5]

Indeed, independent of whether his counsel performed effectively, Henderson has failed to show that any error was prejudicial.  *Strickland*, 466 U.S. at 687–88.  In assessing prejudice, the Court follows the Supreme Court's guidance in *Greer*, which advises that "demonstrating prejudice under *Rehaif* will be difficult for most convicted felons" because "[c]onvicted felons typically know they're convicted felons."  *Greer*, 141 S. Ct. 2090 (citation omitted).  That holding applies here, even though it was issued in the context of plain-error review, because the legal standard for affecting substantial rights is identical to that for *Strickland* prejudice. *Compare Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1904–05 (2018) (an error affects substantial rights if there is a "reasonable probability that, but for the error, the outcome of the proceeding would have been different" (internal quotation marks omitted)), *with Strickland*, 466

---

[5] Henderson does not argue that his counsel should have sought a continuance of his guilty plea. Instead, he argues, in broad terms, that *Rehaif* was "relevant to the decision [he] needed to make about whether to plead guilty."  Pet'r's Reply and Suppl. Claims at 28.

U.S. at 694 (counsel's performance is prejudicial if there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"). Consistent with *Greer*, and for the reasons discussed above, Henderson lacked a viable *Rehaif* claim at the time of both his guilty plea and his sentencing. *See supra*. Had counsel advised Henderson to reject his plea offer and pursue a *Rehaif* claim at trial, Henderson may have had a claim under *Lafler v. Cooper*, 566 U.S. 156 (2012), due to ineffective advice at the plea stage. And in the unlikely event that Henderson had prevailed at trial, he more than likely would have received the same term of imprisonment. This is because this Court sentenced him to two years for his § 922(g) offense and three years for his D.C. offense, to run concurrently, and because *Rehaif* does not apply to his D.C. offense. Henderson accordingly cannot show a reasonable probability that discussing *Rehaif* before his guilty plea would have reduced his sentence.

In sum, because Henderson failed to show both deficient performance and resulting prejudice, his first ineffective assistance claim fails. *See Strickland*, 466 U.S. at 687.

## 2. Notice of Rehaif at Sentencing

Henderson's second claim—based on counsel's failure to appraise him of *Rehaif* before his sentencing—likewise fails. To be sure, his second claim is a closer call on the issue of deficiency. Because the Supreme Court decided *Rehaif* before his sentencing, it is reasonable to expect that counsel be familiar with the case. But when "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697. And here, for all the reasons discussed in the previous section, Henderson has not shown that his counsel's silence on *Rehaif* actually prejudiced him. In particular, there is no "reasonable probability" that a knowledge of *Rehaif* would have prompted Henderson to withdraw his guilty plea, let alone that he would have then been

acquitted at trial.  Similarly, and in contrast to *Abney*, knowledge of *Rehaif* would have neither altered the sentence that Henderson could have received nor provided him additional arguments for his sentencing hearing.  *See Abney*, 812 F.3d at 1082 (noting that seeking a continuance could have "cut in half" defendant's mandatory minimum sentence).  That is enough to reject Henderson's second ineffective assistance claim.  *See Harrington*, 562 U.S. at 112

### 3.  *Objections to Sentencing*

Henderson's challenges to counsel's conduct in his sentencing hearing also fall short.

To start, defense counsel had no obligation to "request that the Court sentence [Henderson] on the D.C. Code offense using the 2019 D.C. Guidelines."  Mot. to Vacate at 7.  Henderson pleaded guilty on June 4, 2019.  *See* Plea Agreement at 11.  The D.C. Sentencing Guidelines provide that sentencing courts "shall use" the version of the guidelines "in effect on the date of plea . . .  unless both parties agree to use the version in effect at the time of sentencing."  D.C. Guidelines Manual § 1.4 (2018).  Under that rule, the 2018 guidelines applied to Henderson, absent a contrary agreement from the government.  *Compare* D.C. Guidelines at 2 (2018) ("goes into effect on July 16, 2018), *with* D.C. Guidelines at 2 (2019) ("goes into effect on July 15, 2019").  The government did not give that agreement in its sentencing memorandum, which used the 2018 guidelines.  *See* Gov't Sentencing Mem. at 3, Dkt. 23 (using the same guidelines range as the Final Pre-Sentence Report ¶ 72, which in turn follows the 2018 guidelines, *see* D.C. Guidelines App'x A (2018)).  Nor did government counsel agree to use the 2019 guidelines at sentencing, when the Court asked about this very issue.  *See* Sent'g Hr'g Tr. at 8–10, Dkt. 39.  For those reasons, the 2018 sentencing guidelines applied to Henderson's D.C. offense.  And it was not ineffective assistance for Henderson's attorney to acknowledge that point of law.  *See id.* at 9 ("If the government is not agreeing to [use the 2019 guidelines], then

we [*i.e.*, the defense] are bound by the 2018.").

Henderson's current counsel's remaining arguments rely on blatant misrepresentations of the record. For instance, plea counsel had no reason to "object to the Court's finding that [Henderson] had an additional criminal history point," Mot. to Vacate at 7, because the Court made no such finding. In his motion to vacate, Henderson asserts that the Court added a point for an alleged juvenile conviction, for "which the Court had no records." *Id.* at 8 (citing Final Pre-Sentence Rep. ¶ 39); *see also United States v. Price*, 409 F.3d 436, 444 (D.C. Cir. 2005). But the pre-sentence report did not assign any points for that conviction. *See* Final Pre-Sentence Rep. ¶ 39. And although the Court asked about that conviction at the sentencing hearing, *see* Sent'g Hr'g Tr. at 6–7, the Court later noted that it was "unclear whether those charges were dismissed," *id.* at 29, so it adopted the pre-sentence report's calculations "without change," *see* Statement of Reasons at 1, Dkt. 27. Suffice it to say, plea counsel could not have objected to a criminal-history point that did not exist.

Moreover, plea counsel did not "fail[] to object to the Court's imposition of the mandatory minimum term of imprisonment on the D.C. Code offense." Mot. to Vacate at 9. The Court did not impose a mandatory minimum for that offense. *See* Sent'g Hr'g Tr. at 32 ("I am also not going to impose a mandatory minimum for the reasons I stated earlier," including a possible lack of notice); Statement of Reasons at 1 ("No count of conviction carries a mandatory minimum sentence"). Instead, the Court exercised its discretion "based on the sentencing guidelines and all the factors listed under [18 U.S.C. §] 3553(a)" to sentence Henderson to 36 months' imprisonment for his D.C. Code offense. Sent'g Hr'g Tr. at 32–33; *see also* Judgment at 3. That sentence was within the guidelines range, which spanned from 24 to 66 months. *See* Statement of Reasons at 1. And because plea counsel had no plausible argument that this in-

guidelines sentence was unlawful, he had no grounds—let alone no constitutionally mandated duty—to object to it.

In sum, Henderson has failed to show that his attorney performed deficiently in his sentencing hearing. The Sixth Amendment does not prohibit counsel from accurately stating the law or require them to raise baseless objections. The Court accordingly has no ground to address whether counsel's conduct was prejudicial. *See Strickland*, 466 U.S. at 694.

### 4. Prior Record Development

Henderson's *pro se* challenges to his counsel's efforts during discovery are also meritless. In a letter to the Court, Henderson stated that his attorney never requested fingerprint or DNA evidence from the recovered firearm, video footage from a nearby apartment complex, or a witness statement from the truck driver. *See* Second Letter at 1. This statement directly contradicts sworn statements in his plea colloquy, in which Henderson agreed that he "had enough time to talk with [his] attorney" and that he was "satisfied with his services as [his] lawyer." Plea Hr'g Tr. at 14, Dkt. 38. Henderson's statement also contradicts the factual proffer that supported his guilty plea, in which Henderson admitted that he "unlawfully possessed" the handgun recovered from the aforementioned witness's truck. Statement of Offense at 4. These contradictions are significant because "[t]he representations of the defendant at a plea hearing as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceeding." *United States v. Farley*, 72 F.3d 158, 163 (D.C. Cir. 1995) (internal quotation marks omitted); *see also United States v. Lemaster*, 403 F.3d 216, 221–22 (4th Cir. 2005) ("[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should . . . dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn

statements.").  Henderson has given no reason to discount the sworn statements above.

Additionally, putting aside whether his counsel in fact requested the material he describes, *see*

Disc. Letter at 1, Dkt. 11-1 (indicating that defense counsel received witness statements and

reports of relevant fingerprint evidence), Henderson has failed to show that any failure to request

them either fell "below an objective standard of reasonableness" or prejudiced him, *Strickland*,

466 U.S. at 688.  His *pro se* claim thus fails.

> 5.  *Notice of Appeal*

Finally, Henderson lacks an ineffective assistance claim based on the fact that his counsel

neither noticed an appeal nor consulted him about doing so.[6]  *See* Pet'r's Reply and Suppl.

Claims at 4–5.  In signing his plea agreement, Henderson waived any right to appeal either his

conviction or his sentence, except "on the basis of ineffective assistance of counsel."  Plea

Agreement at 7–8.  Counsel was entitled to view this waiver as "presumptively valid and []

enforceable" because Henderson's plea was "knowing, intelligent, and voluntary."  *United States*

*v. Lee*, 888 F.3d 503, 506 (D.C. Cir. 2018) (citation omitted); *see also United States v. Guillen*,

561 F.3d 527, 530–31 (D.C. Cir. 2009) (identifying other circumstances in which appeal waivers

are unenforceable, none of which apply here).  And because the waiver was enforceable, it is

hardly surprising that counsel did not discuss the possibility of direct appeal.  *Cf. Massaro*, 538

U.S. at 504 ("[I]n most cases a motion brought under § 2255 is preferable to direct appeal for

deciding claims of ineffective assistance.").

Moreover, the Supreme Court has expressly "reject[ed] a bright-line rule that counsel

---

[6] Henderson offered to prove "at an evidentiary hearing . . . that defense counsel did not meet with him in the cell block after sentencing and did not write to, speak with, or meet with him in the next 14 days."  Pet'r's Second Reply at 4, Dkt. 56.  To conserve judicial resources, the Court assumes the truth of that representation.

must always consult with the defendant regarding an appeal." *Flores-Ortega*, 528 U.S. at 480.

Instead, there is a "constitutionally imposed duty to consult with the defendant about an appeal

when there is reason to think either (1) that a rational defendant would want to appeal . . . , or

(2) that this particular defendant reasonably demonstrated to counsel that he was interested in

appealing." *Id.* And in evaluating those factors, a "highly relevant factor" is whether a

defendant pleaded guilty, especially where that plea "expressly . . . waived some or all appeal

rights." *Id.* Here, Henderson argues that a rational defendant would want to raise not only a

*Rehaif* claim, but also the objections discussed in section III.B.3 of this opinion. *See* Pet'r's

Reply and Suppl. Claims at 5. But Henderson waived the right to raise those very arguments in

his plea agreement. *See* Plea Agreement at 7–8. And in any event, those arguments lack merit,

*see supra*, which suggests that no rational defendant would have brought them, *see Flores-

Ortega*, 528 U.S. at 480 (noting that a "rational defendant would want to appeal" if there are

"nonfrivolous grounds for appeal"). Accordingly, Henderson has not shown "a reasonable

probability that, but for counsel's deficient failure to consult with him about an appeal, he would

have timely appealed." *Id.* at 484.

### C.    The Petitioner's Remaining Argument Is Untimely

Henderson's only remaining argument is that this Court lacked jurisdiction to convict him

because his indictment did not charge an "offense[] against the laws of the United States."

Pet'r's Reply and Suppl. Claims at 31–32 (quoting 18 U.S.C. § 3231). Although his indictment

charged him with violating 18 U.S.C. § 922(g), which makes "unlawful" for felons to carry

firearms, he argues that § 922(g) establishes only a "civil infraction," Pet'r's Reply and Suppl.

Claims at 31–32. The criminal felon-in-possession offense, he argues, derives instead from 18

U.S.C. § 924(a)(2), which ascribes criminal penalties to "knowingly" violating § 922(g). *See*

Pet'r's Reply and Suppl. Claims at 31–32.  And because the indictment did not mention
§ 924(a)(2), Henderson argues that this Court lacked subject-matter jurisdiction.  *Id.*

Putting aside the absurdity of casting § 922(g) as a civil offense, the argument is time-
barred.  Normally, a § 2255 petition must be brought within one year of "the date on which the
judgment of conviction becomes final."  28 U.S.C. § 2255(f)(1).  Because the Court entered
judgment on August 22, 2019, and because Henderson did not appeal, his judgment became final
on September 5, 2019.  *See* Fed. R. App. P. 4(b)(1)(A).  Henderson then raised this above claim
on April 23, 2021, roughly 20 months later.  Moreover, the claim does not "relate back" to the
timely claims in Henderson's initial § 2255 motion.  Amendments to pleadings "relate[] back to
the date of the original pleading when . . . the claim . . . asserted in the amended pleading arose
of the conduct, transaction, or occurrence" described in the original pleading.  Fed. R. Civ. P.
15(c)(2).  "An amended habeas petition," however, "does not relate back (and thereby escape
[§ 2255]'s one-year time limit) when it asserts a new ground for relief supported by facts that
differ in both time and type from those the original pleading set forth."  *Mayle v. Felix*, 545 U.S.
644, 650 (2005).  Following that standard, the Court has considered one of the two supplemental
claims that were raised for the first time in Henderson's April 23 motion—*i.e.*, that his
indictment is defective, under *Rehaif*, for failure to note § 922(g)'s knowledge-of-status
requirement.  But whereas that claim shared with his initial motion the common denominator of
*Rehaif*, Henderson's jurisdictional argument has no such overlap.  Indeed, nothing in
Henderson's initial motion either challenged this Court's jurisdiction or concerned the
relationship between § 922(g) and § 924(a)(2).  Accordingly, because the jurisdictional argument
asserts a wholly "new ground for relief," it is barred by § 2255(f).  *Mayle*, 545 U.S. at 650.

### D.      No Evidentiary Hearing Is Required

Upon thorough consideration of "the motion and the files and records of [this] case," the Court concludes that no evidentiary hearing is necessary.  28 U.S.C. § 2255(b).  The only factual disputes at hand are whether Henderson knew his felony status at the time of his offenses and whether consultation about his Rehaif claim would have improved his position.  But considering the Supreme Court's guidance in *Greer*, *see* 141 S. Ct. at 2097–98; the substantial evidence that Henderson knew his felony status, *see* Gov't's Mem. in Opp'n Ex. 4 at 5, Ex. 5 at 3, Ex. 2 at 1, Ex. 3 at 1; the fact that Henderson did not "point to any information outside the record that would [] substantially assist[]" this Court's disposition, *Toms*, 396 F.3d at 437; and the negligible value of "*post hoc* assertions" in any event, *Lee*, 137 S. Ct. at 1967, an evidentiary hearing on that issue would not alter the Court's analysis.  Accordingly, because the papers and record "conclusively show that [Henderson] is entitled to no relief," 28 U.S.C. § 2255(b), the Court will deny Henderson's motion.

## CONCLUSION

For the reasons above, the petitioner's motion to vacate his judgment of conviction is denied.

_____
DABNEY L. FRIEDRICH
United States District Judge

November 10, 2021